# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JENIFER MOCHOCKI and SEAN MOCHOCKI,
Each individually, and as parents and next friends of
their son, H.M., a minor,

      Plaintiffs,

v.

THE UNITED STATES OF AMERICA

      Defendant.

_____/

3:15-cv-377-J-34JRK

CASE NO.:

## **COMPLAINT**

Plaintiffs Jenifer Mochocki and Sean Mochocki, each individually, and as the natural

parents and next friends of H.M., a minor, by and through undersigned counsel, Sean B. Cronin,

Esq., of Cronin & Maxwell, PL, hereby sue Defendant United States of America and in support

thereof state the following:

1.      This is an action for damages in excess of $75,000.00, exclusive of interest and

costs.

2.      The United States of America (hereinafter "the Defendant") is the Defendant in

this action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and § 2671, *et. seq.*

3.      Plaintiffs Jenifer Mochocki and Sean Mochocki (hereinafter "Mr. Mochocki" and

"Mrs. Mochocki"), are residents of Patrick Air Force Base in Brevard County, Florida.  This

Court has jurisdiction over this claim and venue is proper in the Middle District of Florida,

Jacksonville Division because the events or omissions giving rise to this claim occurred in

Jacksonville, Duval County, Florida.

4.      At all times material, Mrs. Mochocki was the natural mother of H.M., a minor. At all times material, Mr. Mochocki was the natural father of H.M., a minor.

5.      At all times material, Naval Hospital Jacksonville (hereinafter "the Hospital"), located at 2080 Child Street, Jacksonville, Duval County, Florida, was owned and operated by the Defendant and had a duty to provide reasonable and appropriate medical care to Mrs. Mochocki and H.M., a minor.

6.      At all times material, the Hospital held itself out as being a full-service hospital able to provide proper medical, surgical, obstetrical, prenatal, labor and delivery, nursing, diagnostic, and other medical services necessary to properly evaluate, diagnose, deliver and treat patients such as Mrs. Mochocki and/or H.M.

7.      At all times material, the medical and nursing staff at the Hospital were employed by the Defendant and acting within the course and scope of their employment with Defendant.

8.      Pursuant to Florida Statute § 766.118, the Defendant is liable for the negligence of its practitioner and non-practitioner employees.

9.      Pursuant to 28 U.S.C. §2675(a), the claim set forth herein was presented to the Department of the Navy on August 26, 2014.  On February 23, 2015, the Department of the Navy denied the claim.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

10.     On or about February 8, 2012, Mrs. Mochocki sought medical treatment and care, to include obstetrical care, from the medical and nursing staff of the Hospital for the pregnancy of H.M.

11.     Throughout the duration of her pregnancy, Mrs. Mochocki attended her recommended prenatal appointments with vigilant regularity.

2

12.     On or about October 1, 2012, Mrs. Mochocki presented to the Hospital for complaints of labor with contractions every 2 to 3 minutes.

13.     At approximately 4:40 a.m., Mrs. Mochocki underwent her first cervix check and was noted to be 3/80% and minus 2 station.

14.     At approximately 5:50 a.m. Mrs. Mochocki was rechecked and found to be 4/80% and minus 2 station.

15.     At approximately 7:35 a.m. Mrs. Mochocki was rechecked and found to be 4/80% and minus 1 station.

16.     At approximately 8:30 a.m. an epidural was placed and Mrs. Mochocki was monitored for thirty minutes following the placement of the epidural.

17.     At approximately 8:50 a.m., Patricia A. Reichert, M.D. (hereinafter "Dr. Reichert") rechecked Mrs. Mochocki.  Dr. Reichert entered a "late entry note" at approximately 9:34 a.m. which noted H.M.'s fetal heart rate had a baseline of 130, moderate variability, and deep early decelerations that were repetitive and returning to baseline with overall good variability.

18.     Dr. Reichert also noted that the fetal tracing had repetitive deep variable decelerations overall, was a Category 1 strip with good variability, and ordered the placement of an intrauterine pressure catheter and a fetal scalpel electrode.

19.     As a result of the deep variable decelerations shown on the fetal heart tracing, further intrauterine resuscitative measures were started which included multiple positional changes, placing Mrs. Mochocki on oxygen, and initiation of an amnio-infusion.

20.     Dr. Reichert's note further indicated that the medical and nursing staff at the Hospital would continue to monitor Mrs. Mochocki closely.

3

21.    At approximately 10:06 a.m., Mrs. Mochocki was rechecked by Kedric Webster, M.D. ("Dr. Webster") and was noted to be 5.5 cm dilated, 100 effaced and minus 2 station. Also noted on the fetal heart tracing were recurrent variable decelerations with minimum variability. Dr. Webster noted the prior intrauterine resuscitation measures including positional changes and amnio-infusion ordered by Dr. Reichert.

22.    At the time of his evaluation of Mrs. Mochocki, Dr. Webster re-classified the fetal heart tracing as a Category II (Dr. Reichert had previously classified the fetal heart tracing as a Category I at her 8:50 check), documenting a clear clinical indication of fetal decline.

23.    Dr. Webster's 10:06 a.m. note also includes a recommendation to proceed with a cesarean section if Mrs. Mochocki's "cervix does not change; if variability is lost, or if the variables begin to last longer or descend to a lower rate."

24.    At the time of the 10:06 a.m. note, H.M.'s fetal heart tracing had worsened significantly since the initial intrauterine resuscitation measures were taken. The fetal heart tracing showed severe variables with loss of variability and deep variables down into the 60's that had progressively worsened. Further, Dr. Webster documented the fetal heart tracing as a Category II which is a clinical indication of fetal decline.

25.    Yet, despite the obvious and noted clear decline in the fetal heart tracing, Dr. Webster did not prepare Mrs. Mochocki for a cesarean section as clinically indicated.

26.    At 10:28 a.m., the medical records state that Stephanie Meyer, M.D. ("Dr. Meyer") was called by the nurses to Mrs. Mochocki's bedside due to the accidental removal of the IUPC. At the time of this check, Mrs. Mochocki's cervix was 8/100%, minus 1 station. Dr. Meyer noted that she reviewed the fetal heart tracing with Dr. Webster who had agreed no intervention was warranted at that time and that the plan would change and operative delivery

4

would be offered "if ... FHR baseline variability is lost, fetal tachycardia develops, variables deepen or become prolonged or late."

27.     Despite Dr. Reichert's prior written and verbal orders to monitor Mrs. Mochocki closely, the medical records show Mrs. Mochocki did not receive another recheck until 12:05 p.m.

28.     In a delayed note entered at 16:48 by Dr. Reichert, she states that she was called to assess Mrs. Mochocki as a result of the fetal heart tracing displaying late decelerations. Dr. Reichert went on to note that multiple interventions were instituted with no response or improvement to the fetal heart tracing. The FHR was -80 bpm. Dr. Reichert noted that she paged Dr. Webster and Pediatrics for assistance.

29.     While waiting for Dr. Webster to return her page, Dr. Reichert decided that the most imminent form of delivery was necessary for Mrs. Mochocki.

30.     At approximately 12:18 on October 1, 2012, H.M. was vaginally delivered and upon delivery was noted to have no tone or respiratory effort.

31.     H.M. was born with Apgar scores of 1 at 1 minute, 1 at 5 minutes, and 1 at 10 minutes. H.M. was diagnosed with several birth-related issues, including but not limited to hypoxic ischemic encephalopathy.

32.     Sean Mochocki, Jenifer Mochocki, both individually, and as parents and next friends of H.M., filed Administrative Claims with the Office of the Judge Advocate General, Tort Claims Unit Norfolk, Virginia on August 26, 2014. As stated previously, those claims were denied by the Department of the Navy on February 23, 2015.

33.     All of the conditions precedent for the bringing of this lawsuit have occurred or been waived.

## COUNT I

### NEGLIGENCE OF THE UNITED STATES OF AMERICA
### FOR ITS PRACTITIONER MEDICAL CARE AND TREATMENT

Plaintiffs' incorporate the substance of the foregoing factual allegations as if fully stated herein and further state,

34.     At all times relative hereto, the medical personnel at the Hospital, to include Drs. Reichert, Webster and Meyer, each had a duty to use that degree of care and skill in their treatment of H.M. that a reasonably competent physician and/or health care provider, engaged in the same or similar practice and acting in similar circumstances, would use.

35.     The medical and nursing staff of the Hospital, including, but not limited to, Drs. Reichert, Webster, and Meyer, deviated from appropriate standards of reasonable medical care in treating Mrs. Mochocki by:

a)     failing to provide timely and proper medical and obstetric care;

b)     failing to provide timely and proper medical interventions;

c)     failing to closely monitor, evaluate, and respond to Mrs. Mochocki's medical status, including but not limited to H.M.'s worsening fetal heart tracing results;

d)     failing to provide timely and proper medical diagnostic services, including delivery facilitation;

e)     failing to timely intervene, assess and properly respond to the severe nature of H.M.'s fetal decreasing variability and late decelerations;

f)     failing to recognize the risk of hypoxic ischemic encephalopathy in a fetus with decreasing variability and late decelerations;

6

g) failing to timely perform a cesarean section and/or emergent induction of birth;

h) failing to follow the orders written in Mrs. Mochocki's medical records;

i) failing to follow the protocols in place and written within Mrs. Mochocki's medical records;

j) failing to properly diagnose and respond to Mrs. Mochocki's and H.M.'s condition; and

k) failing to otherwise render appropriate care to Mrs. Mochocki and H.M.

36. As a direct and proximate result of the negligence of the Defendant, H.M. sustained severe physical and psychological injuries, including but not limited to permanent brain injury, which have resulted in significant permanent loss of certain bodily functions and the resulting pain and suffering, disability, disfigurement, mental and emotional anguish, loss of capacity for the enjoyment of life, loss of earnings, and the loss of the ability to earn money. The losses sustained by H.M. are permanent and continuing in nature leaving H.M. to suffer substantial future losses, after he obtains his majority.

37. The Defendant is vicariously liable for the negligent medical care provided to Mrs. Mochocki and/or H.M. by the practitioners at the Hospital.

38. As a direct and proximate result of the negligence of Defendant, H.M., by and through his parents and next friends, Plaintiffs Mr. and Mrs. Mochocki, has incurred expenses of hospitalization, medical, psychological and nursing care and treatment, and will continue to incur such expenses in the future.

WHEREFORE, Plaintiffs demand judgment for damages and costs against Defendant United States of America.

7

## COUNT II

### DERIVATIVE CLAIMS OF JENIFER AND SEAN MOCHOCKI
### FOR ITS PRACTITIONER MEDICAL CARE AND TREATMENT

Plaintiffs' incorporate the substance of the foregoing factual allegations as if fully stated herein and further state,

39.     At all times material to the allegations herein, Plaintiffs Jenifer Mochocki and Sean Mochocki were the natural parents of H.M., a minor.

40.     As a direct and proximate result of the negligence stated in the aforementioned Count I by the Defendant, Plaintiffs Mr. and Mrs. Mochocki have incurred expenses of hospitalization, medical, psychological, and nursing care and treatment for H.M., and will continue to incur these expenses in the future.

41.     As a direct and proximate result of the negligence of the Defendant, Mr. and Mrs. Mochocki have suffered the loss of services, earning abilities, support, companionship, comfort, society, love, affection, solace and attention of H.M., and have suffered significant mental anguish due to H.M.'s injuries and disabilities.  These losses are permanent and/or continuing in nature and Plaintiffs will continue suffer these losses in the future.

WHEREFORE, Plaintiffs demand judgment for damages and costs against Defendant United States of America.

## COUNT III

### NEGLIGENCE OF THE UNITED STATES OF AMERICA FOR
### ITS NON-PRACTITIONER MEDICAL CARE AND TREATMENT

Plaintiffs' incorporate the substance of the foregoing factual allegations as if fully stated herein and further state,

8

42.     At all times relative hereto, the medical personnel at the Hospital, to include all non-practitioner personnel had a duty to use that degree of care and skill in their treatment of H.M. that a reasonably competent non-practitioner health care provider, engaged in the same or similar practice and acting in similar circumstances, would use.

43.     The medical and/or nursing staff of the Hospital, including, but not limited to, deviated from appropriate standards of reasonable non-practitioner care in treating Mrs. Mochocki by:

l)      failing to provide timely and proper medical, nursing and obstetric care;

m)      failing to provide timely and proper medical and nursing interventions;

n)      failing to closely monitor, evaluate, and respond to Mrs. Mochocki's medical status, including but not limited to H.M.'s worsening fetal heart tracing results;

o)      failing to ensure timely and proper medical diagnostic services, including delivery facilitation;

p)      failing to timely intervene, assess and properly respond to the severe nature of H.M.'s fetal decreasing variability and late decelerations;

q)      failing to timely ensure performance of cesarean section and/or emergent induction of birth;

r)      failing to follow the orders written in Mrs. Mochocki's medical records;

s)      failing to follow the protocols in place and written within Mrs. Mochocki's medical records;

t)      failing to properly respond to Mrs. Mochocki's and H.M.'s condition; and

u)      failing to otherwise render appropriate care to Mrs. Mochocki and H.M.

9

44.     As a direct and proximate result of the negligence of the Defendant, H.M. sustained severe physical and psychological injuries, including but not limited to permanent brain injury, which have resulted in significant permanent loss of certain bodily functions and the resulting pain and suffering, disability, disfigurement, mental and emotional anguish, loss of capacity for the enjoyment of life, loss of earnings, and the loss of the ability to earn money.  The losses sustained by H.M. are permanent and continuing in nature leaving H.M. to suffer substantial future losses, after he obtains his majority.

45.     The Defendant is vicariously liable for the negligent medical care provided to Mrs. Mochocki and/or H.M. by the non-practitioners at the Hospital.

46.     As a direct and proximate result of the negligence of the Defendant, H.M. by and through his parents and next friends, Plaintiffs Mr. and Mrs. Mochocki, has incurred expenses of hospitalization, medical, psychological and nursing care and treatment, and will continue to incur such expenses in the future.

WHEREFORE, Plaintiffs demand judgment for damages and costs against Defendant United States of America.

## COUNT IV

### DERIVATIVE CLAIMS OF JENIFER AND SEAN MOCHOCKI
### FOR ITS NON-PRACTITIONER MEDICAL CARE AND TREATMENT

Plaintiffs' incorporate the substance of the foregoing factual allegations as if fully stated herein and further state,

47.     At all times material, Plaintiffs Mr. and Mrs. Mochocki were the natural parents of their son, H.M.

48.     As a direct and proximate result of the negligence stated in the aforementioned Count III by the Defendant, Mr. and Mrs. Mochocki have incurred expenses of hospitalization,

10

medical, psychological, and nursing care and treatment for H.M., and will continue to incur these expenses in the future.

49.     As a further direct and proximate result of the negligence of Defendant, Mr. and Mrs. Mochocki have suffered the loss of services, earning abilities, support, companionship, comfort, society, love, affection, solace, and attentions of H.M., and have suffered mental anguish due to H.M.'s injuries and disabilities.  These losses are either permanent or continuing in nature and Plaintiffs will continue to suffer these losses in the future.

WHEREFORE, Plaintiffs' demand judgment for damages and costs against Defendant United States of America.

## CERTIFICATE OF GOOD FAITH

The undersigned attorney certifies that a reasonable investigation has been made as permitted by the circumstances to determine that grounds exist for a good faith belief that there has been negligence in the care or treatment of Jenifer Mochocki and H.M., a minor.  The investigation gave rise to a good faith belief that grounds exist for the subject action against Defendant.

Dated this  25th day of March 2015.

CRONIN & MAXWELL, PL

Sean B. Cronin, Esquire
Florida Bar No. 146447
4250 Lakeside Drive, Suite 204
Jacksonville, Florida  32210
(904) 388-9555
(904) 388-0792
sean@croninmaxwell.com
service-cm@croninmaxwell.com

11